| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL V | | |
| EDICIONES SANTILLANA, INC.<br><br>**Recurrente**<br><br>V.<br><br>DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO<br><br>**Recurrida**<br><br>*LEARN AID, LLC, SM, INC., LS INNOVATIVE EDUCATION CENTER, INC., GLOBAL EDUCATION EXCHANGE OPPORTUNITIES, INC.,* BETANCES *PROFESSIONAL SERVICES AND EQUIPMENT, INC.*<br><br>**Parte con interés** | KLRA202400702<br>CONS.<br>KLRA202500012 | *REVISIÓN JUDICIAL* procedente del Departamento de Educación<br><br>Caso Núm:<br>DEPR-UAF-23-009 |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 13 de febrero de 2025.

El 26 de diciembre de 2024, Ediciones Santillana, Inc. (Santillana) compareció ante nos mediante un *Escrito de Revisión Judicial* en el caso núm. KLRA202400702. Por su parte, el 8 de enero de 2025, Learn Aid, LLC (Learn Aid) compareció ante nos mediante un *Escrito de Revisión Judicial* en el caso núm. KLRA202500012. En ambos recursos, las partes solicitaron la revocación de un *Aviso de Adjudicación* que se emitió el 6 de noviembre de 2024 y se notificó el 4 de diciembre de 2024 por el Departamento de Educación de Puerto Rico a través de su Oficina de Compras, Obligaciones y Adjudicación de Fondos (DEPR). Mediante el aludido dictamen, el DEPR le adjudicó la subasta a S.M., Inc.

Número Identificador

SEN2025 _____

A tenor con la Orden Administrativa Núm. DJ 2019-316, según enmendada por la Orden Administrativa Núm. DJ 2019-316A que emitió la Jueza Presidenta del Tribunal Supremo, la Hon. Maite Oronoz Rodríguez, y a tenor con la Orden Administrativa Núm. TA 2021-092 que emitió el Juez Administrador del Tribunal de Apelaciones, Hon. Roberto Sánchez Ramos, el 10 de febrero de 2025, ordenamos la consolidación del caso núm. KLRA202500012, con el de mayor antigüedad, el caso núm. KLRA202400702.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

I.

El 5 de abril de 2024, el DEPR publicó en su página web y en el Registro Único de Subastas de la Administración de Servicios Generales (ASG) un *Documento de Solicitud de Propuestas* (RFP) intitulado Revisión Curricular CTE. El RFP solicitaba los servicios de un proveedor calificado con experiencia en diseño curricular para brindar apoyo en el proceso de revisión, edición y publicación de documentos curriculares para los cursos ocupacionales y de educación técnica ofrecidos bajo la SAEOT. Además, dicha publicación informaba que la fecha límite para someter las propuestas sería el 25 de abril de 2024 en o antes de las 4:30pm.

En cumplimiento con la fecha límite, seis (6) entidades presentaron propuestas ante la Oficina de Asuntos Federales. Estas entidades eran las siguientes: (1) SM, Inc.; (2) LS Innovative Education Center, Inc.; (3) Santillana; (4) Global Education Exchange Oportunities, Inc.; (5) Learn Aid; y, por último (6) Betances Professional Services and Equipment, Inc.

Las propuestas fueron evaluadas de acuerdo con las reglas y los criterios establecidos en la RFP. Específicamente, según el DEPR, como parte del proceso de evaluación, se llevó a cabo un proceso de cernimiento de cada propuesta entregada para determinar si la entidad era elegible, si incluyó todos los documentos obligatorios y si atendía

todos los requisitos mandatorios establecidos en la RFP. Según el DEPR todas las entidades cumplieron con esta primera etapa de la evaluación.

Luego del proceso de cernimiento, un Comité de Evaluadores (el Comité) seleccionado por el DEPR realizó una evaluación de capacidad financiera y una evaluación técnica. Como parte de la evaluación técnica se tomaron en consideración los siguientes criterios: (1) experiencia del proponente y del equipo de trabajo; (2) plan de servicios propuesto; y, por último (3) presupuesto. Cabe precisar que, el DEPR informó que el requisito de solidez financiera era determinante para que las entidades pasaran a la fase de evaluación técnica.

El Comité procedió a realizar la evaluación financiera y únicamente tres entidades obtuvieron sobre el mínimo del 60% requerido para pasar a la evaluación técnica. Estas entidades fueron SM, Inc., Santillana y Learn Aid. Posteriormente, el Comité se reunió para discutir las propuestas y evaluar y asignarles puntuaciones finales en el formulario de evaluación. Como resultado de la evaluación, el Comité realizó la siguiente tabla detallando las puntuaciones obtenidas por cada entidad en el proceso de evaluación:

| Número de Propuesta | Entidad | Puntuación de Solidez Financiera | Puntuación de Evaluación Técnica |
|---|---|---|---|
| DEPR-UAF-23-009-001 | SM, Inc. | 73.33% | 97.5% |
| DEPR-UAF-23-009-002 | LS Innovative Education Center, Inc. | 50.83% | N/A |
| DEPR-UAF-23-009-003 | Ediciones Santillana, Inc. | 85.00% | 76.66% |
| DEPR-UAF-23-009-004 | Global Education Exchange Opportunities, Inc. | 37.50% | N/A |

| DEPR-UAF-23-009-005 | Learn Aid, Inc. | 79.17% | 86.66% |
|---|---|---|---|
| DEPR-UAF-23-009-006 | Betances Professional Services and Equipment, Inc. | 30.83% | N/A |

El DEPR expresó que, en la Solicitud de Propuestas, se estableció que luego de realizar el proceso de evaluación, la propuesta que obtuviera la puntuación más alta y que alcanzara una puntuación mínima de 80% en la evaluación técnica, sería recomendada para selección. Concluida la evaluación, el 6 de noviembre de 2024, el DEPR emitió un *Aviso de Adjudicación* en el cual determinó que acogía los resultados del proceso de evaluación realizados por el Comité y le adjudicaba la subasta a SM, Inc. Resaltó que dicha entidad obtuvo la puntuación más alta de la evaluación técnica con un 97.5%.[1] Además, fundamentó su decisión de adjudicarle la subasta a SM, Inc. en las siguientes razones:

(1) El proponente obtuvo una puntuación satisfactoria en la evaluación correspondiente a la experiencia del proponente y del equipo de trabajo lo que permite concluir que cuenta con la preparación y experiencia necesaria para brindar los servicios de manera exitosa.

(2) El proponente obtuvo la máxima puntuación disponible en la evaluación del plan de servicios presentado para proveer los servicios solicitados en la RFP, lo que permite concluir que tiene un entendimiento del alcance de estos y que su plan se ajusta a las necesidades del DEPR.

(3) El proponente obtuvo la puntuación máxima disponible en la evaluación de los costos presentados, estimándose que ha presentado una oferta de costos razonable para la provisión de los servicios. El costo presentado en la propuesta es de $8,590,149.90.

---

[1] Hacemos constar que, el DEPR había emitido un primer *Aviso de Adjudicación* el 23 de agosto de 2024 y tanto Learn Aid como Santillana habían presentado un recurso de revisión judicial impugnando dicho dictamen. El Tribunal de Apelaciones consolidó ambos recursos (KLRA202400560 y KLRA202400575) y los desestimó por falta de jurisdicción por prematuro. Fundamentó su decisión en que la notificación por parte del DEPR en el *Aviso de Adjudicación* había sido defectuosa. Por lo tanto, le devolvió el caso al DEPR para que emitiera la debida notificación y pudiesen comenzar a transcurrir los términos para acudir en alzada. A raíz de esta determinación fue que el DEPR emitió el segundo *Aviso de Adjudicación* que tenemos ante nuestra consideración.

KLRA202400702 CONS. KLRA202500012

Por otro lado, cabe precisar que, como parte de dicho dictamen, el DEPR incluyó un resumen de cada propuesta y la razón por la cual no seleccionó a las otras entidades. Particularmente, las razones por la cual el DEPR no seleccionó a Santilla son las siguientes:

> Según establecido en la Solicitud de Propuestas, sección VII. Criterios de Evaluación y Selección del proveedor de servicios, inciso 2, b, ii. Evaluación técnica:
>
> "...Se seleccionará la propuesta que obtenga el porcentaje más alto en la evaluación técnica, con un minimo del 80% en la misma..."
>
> El proponente no obtuvo el porcentaje más alto en la evaluación técnica, así como tampoco alcanzó el mínimo de 80%.
> Las razones por las cuales se le descontaron puntos en la evaluación técnica fueron las siguientes:
>
> 1. Los servicios solicitados requieren que se creen los documentos curriculares, sin embargo, la propuesta contiene las palabras edición y redacción. Se espera que el proveedor cree los documentos (guías curriculares, prontuarios y demás). Editar un documento sería trabajar sobre uno que ya existe.
>
> 2. El proponente no describe o explica su capacidad administrativa y no menciona las funciones de cada área.
>
> 3. El proponente no demostró satisfactoriamente contar con el personal necesario con el conocimiento y la habilidad para proveer los servicios descritos en la RFP. Necesita revisar su equipo de trabajo. La Guía de Transición al mundo laboral es para todos los estudiantes ocupacionales. Hay 10 recursos para revisión y análisis curricular de los cuales sólo uno tiene preparación académica en secundaria y ninguno en ocupacional y técnica. Hay 25 puestos para la misma categoría disponibles para contratación. Para el área de análisis curricular e investigación tienen 70 puestos de los cuales 43 están pendientes por contratar o no tienen candidatos. De los candidatos que, sí están identificados, solo 4 tienen preparación y experiencia en el área ocupacional, revisión y análisis de currículo.
>
> 4. El proponente no fue específico en la descripción del personal que compone el equipo de trabajo. Debió ser más específico en cuanto a las funciones que realizará cada área.

5. La propuesta no indica cómo la entidad se asegurará de que el personal asignado cuente con la experiencia y preparación necesaria según requerido en la RFP.

6. En el plan de servicios: (a) las especialidades están incorrectas en la página 79. (b) El proponente no deja claro el proceso de contratación para el personal que falta por contratar. (c) En la propuesta no se incluye, no se menciona la colaboración con los "Stakeholders", (d) Se indica que se utilizará el modelo Kanban. No describe ni detalla cómo implementaría las recomendaciones más allá de una planilla de validación. El plan no especifica qué se trabajará ni en qué fase.

7. El comité identificó un descuadre en el presupuesto presentado. Hay error en casi todas las cuantías resultando en totales distintos a los presentados y con diferencia sustancial entre el presupuesto presentado por entregable y el presupuesto presentado por tipo de recurso. El presupuesto por entregable suma un total de $10,980,676.60 (en la propuesta se indica $9442,440.54), mientras que el presupuesto en la tabla por tipo de recurso suma $9,442,236.04 (en la propuesta se indica $9,442,440.54).

De igual forma, puntualizó que no seleccionó a Learn Aid por las

siguientes razones:

Según establecido en la Solicitud de Propuestas, sección VII. Criterios de Evaluación y Selección del proveedor de servicios, inciso 2, b, ii. Evaluación técnica:

"…Se seleccionará la propuesta que obtenga el porcentaje más alto en la evaluación técnica, con un mínimo del 80% en la misma…"

El proponente no obtuvo el porcentaje más alto en la evaluación técnica, aunque sí alcanzó el mínimo de 80%.

Las razones por las cuales se le descontaron puntos en la evaluación técnica fueron las siguientes:

1. Según requerido, el proponente presenta un ejemplo donde la entidad proveyó servicios similares a los solicitados en la RFP. Indica que tuvieron buenos resultados, pero no presentan datos cuantitativos ni como midieron dichos resultados (no se presentaron detalles).

2. En el equipo de trabajo, el proponente no cuenta con especialista para cada una de las áreas o especialidades que se estarán trabajando.

3. En el plan de trabajo presentado: (a) en el área de las tablas de líneas de tiempo no deja claro en que etapa se reunirá con los stakeholders. (b) En el calendario de

servicios o plan de trabajo no se especifica o establece cómo será el proceso para la entrega de los documentos (entregables) (c) No menciona el proceso de validación y los pasos a seguir para el mismo. (d) No indicó como se trabajará con las planillas de validación ni si las redactarán. (e) La propuesta menciona los reportes, pero no detalla los entregables.

4. En la información ofrecida sobre los costos: (a) el proponente no menciona o hace referencia de cuántos recursos necesitarán. (b) En el narrativo de costos presentan información que crea dudas sobre la capacidad financiera para llevar a cabo el proyecto.

En desacuerdo con esta determinación, el 5 de diciembre de 2024, Santillana presentó una solicitud de reconsideración. En primer lugar, señaló que las instrucciones del RFP establecían que las propuestas presentadas no debían identificar la entidad o institución en ninguna parte de la propuesta salvo en aquellas que así fuese solicitado. Añadió que dichas instrucciones exponían que toda propuesta que identificara el proponente en el cuerpo de esta podría ser descalificada. Ante ello, sostuvo que SM, Inc. incluyó en su propuesta el nombre y el resume de un individuo que, al presente, era gerente de operaciones de una compañía que estaba afiliada a SM, Inc. Por esta razón, concluyó que se debía descalificar a SM, Inc. Para sostener su argumento, indicó que, por ese mismo motivo, el DEPR había descalificado a Learn Aid en otro RFP. Por otro lado, enumeró las deficiencias señaladas por el Comité Evaluador y presentó sus defensas para cada una de ellas. A tales efectos le solicitó al Comité Evaluador a evaluar nuevamente la propuesta con las explicaciones brindadas en este escrito para las presuntas deficiencias.

Transcurrido el término que provee la ley sin que el DEPR se expresara en cuanto a la solicitud de reconsideración, el 26 de diciembre de 2024, Santillana presentó el recurso núm. KLRA202400702 y formuló los siguientes señalamientos de error:

**Erró la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos a través de su comité evaluador al no descalificar a la compañía agraciada, SM, Inc., en la etapa de cernimiento por incumplir con los requisitos esbozados en el RFP.**

**Erró la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos a través de su Comité Evaluador al identificar en sus evaluaciones que Santillana no proveyó la información requerida en cuanto al personal, sus funciones y descripciones.**

**Erró la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos a través de su Comité Evaluador al identificar en sus evaluaciones que el personal de Santillana no cuenta con los recursos necesarios para cumplir con los entregables.**

**Erró la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos a través de su Comité Evaluador al levantar como error un descuadre en el presupuesto presentado por parte de Santillana.**

**Erró la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos a través de su Comité Evaluador al aplicar requerimientos que no figuran entre los requisitos mandatorios del RFP y abusar de su discreción al indebidamente restar puntos a la propuesta de Santillana, en particular en el calendario de servicios relacionado a los stakeholders y los entregables.**

Cabe precisar que, junto a su recurso, Santillana presentó una solicitud de auxilio de jurisdicción solicitando la paralización de los procedimientos ante el DEPR con relación a la solicitud de propuesta. Sin embargo, el 26 de diciembre de 2024, un panel especial que se designó para el periodo del 23 al 27 de diciembre de 2024, emitió una *Resolución* declarando No Ha Lugar la referida solicitud de auxilio de jurisdicción. Además, le concedió al DEPR y a SM, Inc. un término para presentar su posición en cuanto al recurso de Santillana. Oportunamente, tanto el DEPR como SM, Inc. presentaron su oposición al recurso de Santilla. Ambas partes negaron que el DEPR cometiera los errores que Santillana le imputó.

Posteriormente, el 8 de enero de 2025, Learn Aid presentó el recurso núm. KLRA202500012 y formuló los siguientes señalamientos de error:

**Erró y abusó de su discreción la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos a través de su Comité Evaluador al no descalificar la propuesta de SM, Inc. en la etapa de cernimiento por incumplir con las instrucciones del RFP sobre el anonimato de la entidad o información que identifique al proponente en el cuerpo de ésta.**

**Erró y abusó de su discreción la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos a**

**través de su Comité Evaluador, al no aplicar consistente y uniformemente la puntuación y al utilizar criterios subjetivos y no documentados en la evaluación técnica de las propuestas afectando de manera injusta la puntuación de la Parte Recurrente.**

**Erró y abusó de su discreción la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos a través de su Comité Evaluador al restar puntos de manera indebida a la propuesta de Learn Aid, específicamente en el Calendario de Servicios relacionados a los *stakeholders* y los entregables, de forma arbitraria e irrazonable, a base de requerimientos que no figuran entre los requisitos mandatorios del RFP.**

**Erró y abusó de su discreción la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos a través de su Comité Evaluador al restarle cinco (5) puntos a la propuesta de Learn Aid en relación al presupuesto, sin justificación técnica o fundamentada en los criterios establecidos por el RFP.**

De igual forma, Learn Aid presentó una solicitud de auxilio de jurisdicción junto a su recurso solicitando la paralización de los procedimientos la cual fue declarada No Ha Lugar mediante una *Resolución* que emitimos el 9 de enero de 2025. Asimismo, le concedimos al DEPR y a SM, Inc. hasta el 27 de enero de 2025 para presentar su posición al recurso de Learn Aid. La parte recurrida presentó una solicitud de prórroga para presentar su postura en cuanto al recurso y se le concedió. Luego, oportunamente, ambas partes, a saber, el DEPR y SM, Inc., presentaron su posición en cuanto el recurso y negaron que el DEPR cometiera los errores que se le imputaron.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. Veamos.

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las

decisiones de las agencias administrativas". *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Caldero López,* supra, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. Íd.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág.128. Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

Particularmente, cuando el ente administrativo le adjudica la buena pro a una entidad en un proceso de compra de bienes y servicios, los tribunales no deben sustituir el criterio de dicha agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediante fraude o mala fe. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras,* 213 DPR ____ (2024), 2024 TSPR 82. Así pues, en ausencia de estos elementos, ningún postor tiene derecho a quejarse cuando otora propuesta es elegida como la "más ventajosa". Íd. De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. *Torres Rivera v. Policía de PR,* supra, págs. 627-628.

**-B-**

El Estado utiliza dos métodos para adquirir bienes y servicios, a saber, (1) la subasta formal y (2) el requerimiento de propuestas (RFP). *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019). El objetivo principal de estos métodos es promover la buena administración del gobierno, proteger el erario, y evitar el favoritismo, la corrupción y el descuido en la contratación gubernamental. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras*, supra. De ordinario, el Estado utiliza el procedimiento de subasta pública el cual consta de las siguientes etapas:

> *(1) la preparación de los pliegos de condiciones y especificaciones; (2) la publicación del aviso de subasta; (3) el recibo de las propuestas selladas y su posterior apertura pública; (4) la evaluación y el estudio de las propuestas por el comité evaluador de la agencia; (5) la recomendación del comité respecto a la adjudicación de la buena pro; (6) la adjudicación de la subasta, y (7) la notificación a los licitadores. ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018).

Ahora bien, el RFP se distingue por ser un procedimiento más flexible e informal. *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 996 (2009). A diferencia de la subasta, el RFP permite que, durante la evaluación de las propuestas, el Estado pueda negociar con los licitadores por lo que le confiere a estos últimos la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro". Íd., pág. 997. Este procedimiento se utiliza cuando se pretenden obtener bienes o servicios especializados que involucran asuntos técnicos y complejos, o cuando existen pocos competidores cualificados. *R & B Power v. E.L.A.*, 170 DPR 606, 621-622 (2007). El RFP incluirá aquellos requisitos a considerar en la adjudicación del contrato, el valor que se asigne a éstos, y las fechas en que se recibirán las propuestas y se adjudicará la buena pro. *Íd.*, a la pág. 622.

Aunque el RFP es un procedimiento más informal que la subasta, es necesario que se les garantice a esos licitadores cuyas propuestas fueron rechazadas su derecho a cuestionar la decisión de la agencia, mediante los mecanismos de reconsideración y revisión

judicial contenidos en la Ley de Procedimiento Administrativo Uniforme. *Maranello et al. v. O.A.T.*, *supra*, a las págs. 790-791. Adicionalmente, y al igual que en las subastas, se debe procurar la transparencia dentro del procedimiento y la protección del erario. *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 998.

### III.

### -A-

### Señalamientos de Error

### KLRA202400702

En su primer señalamiento de error, Santilla argumentó que la Oficina Central de Compras, Obligaciones y Adjudicaciones de Fondos, a través de su Comité Evaluador, erró al no descalificar a SM, Inc. en la etapa de cernimiento por incumplir con los requisitos esbozados en el RFT. Específicamente, argumentó que, el Comité Evaluador pasó por alto las instrucciones básicas en la evaluación inicial de las propuestas al no descalificar a SM, Inc. por haber incluido información de un gerente de proyectos que se asociaba con la entidad violentando así las instrucciones sobre anonimato. Por otro lado, en su segundo señalamiento de error, sostuvo que el Comité Evaluador erró al establecer en sus evaluaciones que Santillana no proveyó la información requerida en cuanto al personal, sus funciones y descripciones.

Asimismo, en su tercer señalamiento de error, indicó que el Comité Evaluador erró al identificar en sus evaluaciones que el personal de Santillana no contaba con los recursos necesarios para cumplir con los entregables. En el cuarto señalamiento de error, expresó que el Comité Evaluador erró al levantar como error un descuadre en el presupuesto presentado por Santillana. Por último, en su quinto señalamiento de error, planteó que el Comité Evaluador erró al restarle puntos en su propuesta particularmente en el calendario de servicios relacionado a los *stakeholders* y los entregables.

**KLAN202500012**

En su primer señalamiento de error, Learn Aid argumentó que el Comité Evaluador erró al no descalificar la propuesta de SM, Inc. en la etapa de cernimiento por incumplir con las instrucciones del RFP sobre el anonimato de la entidad o información que identifique al proponente en el cuerpo de esta. Además, en su segundo señalamiento de error, sostuvo que el Comité Evaluador erró al no aplicar consistente y uniformemente la puntuación y utilizar criterios subjetivos y no documentados en la evaluación técnica de la propuesta afectando de manera injusta su puntuación. Por otra parte, en su tercer señalamiento de error sostuvo que el Comité Evaluador erró al restarle puntos a la propuesta de Learn Aid específicamente en el calendario de servicios relacionado a los *stakeholders* y los entregables. Finalmente, en su cuarto señalamiento de error, esbozó que el Comité Evaluador erró al restarle cinco (5) puntos a la propuesta de Learn Aid en relación con el presupuesto sin justificación técnica o fundamentada a los criterios establecidos por el RFP.

**-B-**

**Discusión de Señalamientos de Error de Ambos Recursos**

Tanto Santillana como Learn Aid solicitaron la revocación de un *Aviso de Adjudicación* que emitió el DEPR el 6 de noviembre de 2024 mediante la cual acogió los resultados del proceso de evaluación que realizó el Comité Evaluador y, en consecuencia, le adjudicó la subasta a SM, Inc. Particularmente, en su primer señalamiento de error, ambas partes indicaron que, el Comité Evaluador erró al no descalificar a SM, Inc. en la etapa de cernimiento por este último presuntamente incumplir con las instrucciones del RFP sobre el anonimato de la entidad. Particularmente, las partes señalaron que, las instrucciones del RFP establecían que las propuestas presentadas no debían identificar la entidad o institución en ninguna parte de la propuesta salvo en aquellas que así fuese solicitado. Añadieron que dichas

instrucciones exponían que toda propuesta que identificara el proponente en el cuerpo de esta podría ser descalificada.

En vista de lo anterior, indicaron que, en la *Tabla de Personal Asignado* de la propuesta de SM, Inc., dicha entidad incluyó al Dr. Neftaly Albert Rivera (señor Rivera) como gerente de proyecto y en el Apéndice I incluyó su resumé. Plantearon que, en este resumé se describió al señor Rivera como gerente de operaciones de ISME, LLC, una entidad afiliada a SM, Inc. De este modo, razonaron que, SM, Inc. incumplió con las especificaciones de anonimato establecidas en el RFP y debía ser descalificado. No les asiste la razón. *Veamos.*

En lo pertinente, el inciso 2(b) de la Sección VI de la RFP, relacionado a las instrucciones generales de formato de la propuesta, expone lo siguiente:

> Las propuestas presentadas no deben identificar la entidad o institución en ninguna parte de la propuesta salvo en aquellas que así sea solicitada. El proponente se referirá en el contenido de la propuesta como "entidad" o "institución" según prefiera en el lugar de nombre.
>
> Toda propuesta que contenga información **que identifique al proponente** en el cuerpo de esta (ej. encabezado, referencia a personas o entidades, logos, nombre de la entidad como parte del correo electrónico, entre otros) **podrá** ser descalificada. (Énfasis y subrayado nuestro).

En primer lugar, cabe precisar que, la sección antes citada, dispone que las propuestas cuyo contenido incluyan información que identifique al proponente **podrá** ser descalificada. Como es sabido, la palabra "podrá" viene acompañada del término "discreción" por lo que la acción por parte del DEPR para descalificar a una entidad no es de carácter obligatorio. Sin embargo, de un examen minucioso de la propuesta de SM, Inc. no surge que ésta haya incluido su nombre, logo, emblema o marca en el cuerpo de la propuesta en incumplimiento con el requisito de anonimato. Ahora bien, si bien es cierto que la referida sección también establece que no se debe hacer referencia a ninguna entidad o persona que identifique a la entidad, en el inciso 3(g) de la Sección IV, relacionado a los documentos de la propuesta, el DEPR exigía que los proponentes incluyeran los resumé de cada uno de los

recursos incluidos en la tabla de personal asignados al proyecto. La mención del señor Rivera y el anejo de su resumé por parte de SM, Inc. se realizó en cumplimiento con dicha sección. Nótese que, el inciso 2(b) de la Sección VI establece que las propuestas presentadas no deben identificar la entidad o institución en ninguna parte de la propuesta **salvo** en aquellas que así sea solicitada. En este caso, la inclusión del señor Rivera en el cuerpo de la propuesta se incluyó como parte de la información solicitada por el DEPR en el RFP. Por las razones antes expuestas, el primer señalamiento de error de ambas partes **no** se cometió.

En cuanto a los restantes señalamientos de error presentados por las partes, a saber, el núm. 2,3,4 y 5 de Santillana y el 2,3 y 4 de Learn Aid, concluimos que luego de realizar nuestra función revisora tomando en cuenta los criterios esbozados en *Torres Rivera v. Policía de PR*, supra, págs. 627-628, no encontramos que el DEPR haya sido arbitrario o haya tomado una determinación irrazonable o ilegal al adjudicarle la buen pro de la RFP a SM, Inc. Evaluado el *Aviso de Adjudicación* podemos colegir que el Comité Evaluador llevó a cabo un proceso de evaluación conforme a las reglas y los criterios establecidos en el RFP.

Específicamente se llevó a cabo un proceso de cernimiento mediante el cual se evaluó si las entidades eran elegibles, si incluyeron todos los documentos obligatorios y si cumplieron con todos los requisitos mandatorios establecidos en la RFP. Luego se realizó una evaluación de capacidad técnica y una evaluación de capacidad financiera. Conforme a estas evaluaciones se asignaron puntuaciones finales utilizando una rubrica designada para estos procesos. Al finalizar la evaluación, el Comité determinó que procedía adjudicarle la subasta a SM, Inc. y detalló los fundamentos para su decisión. De igual forma, el DEPR proveyó una lista de razones por la cual no le adjudicó la subasta a Santillana o a Learn Aid.

Así pues, reconociendo la deferencia que el DEPR se merece debido a su experiencia y pericia en los procesos de adquisición de bienes y servicios a través de requerimiento de propuestas, debemos sostener su decisión. Máxime, cuando no encontramos en las actuaciones de dicha agencia la existencia de pasión, prejuicio, parcialidad o error manifiesto. De este modo, los señalamientos de error núm. 2,3, 4 y 5 de Santillana y los 2, 3 y 4 de Learn Aid no se cometieron.

IV.

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones